IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

V.                    Case No. 2:02-cr-20013-PKH-MEF

ALBERTO JIMENEZ                    DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed March 10, 2016. (Doc. 64) No service was authorized and the United States of America, therefore, has not filed a response. The matter is ready for Report and Recommendation.

## I. Background

On January 31, 2002, a Criminal Complaint was filed against Petitioner, Alberto Jimenez ("Jimenez"), alleging that on or about January 20, 2002, in Crawford County, Western District of Arkansas, Jimenez and a co-defendant, aiding and abetting each other and others known and unknown, did knowingly possess with intent to distribute a controlled substance, namely, more than five kilograms of cocaine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. § 2. (Doc. 1) Jimenez made his initial appearance before the Hon. Beverly S. Jones on February 1, 2002, where he waived the issues of probable cause and detention. (Doc. 5) Attorney George L. Lucas ("Lucas") was appointed to represent Jimenez. (Docs. 5, 7)

On March 19, 2002, Jimenez was named in a one-count Indictment, filed in the United States District Court for the Western District of Arkansas, Fort Smith Division, charging that on or about January 20, 2002, in the Western District of Arkansas, Fort Smith Division, Jimenez and a co-

-1-

defendant, aiding and abetting each other and others known and unknown to the grand jury, did knowingly and intentionally possess with intent to distribute a mixture or substance containing five (5) kilograms or more of cocaine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)(II) and 18 U.S.C. § 2. (Doc. 11) Jimenez appeared for arraignment with his appointed counsel, Lucas, on March 25, 2002, and he entered a not guilty plea to the charge brought against him in the Indictment. (Doc. 15)

On July 9, 2002, Jimenez appeared with counsel before the Hon. Robert T. Dawson for a change of plea hearing. (Doc. 42) A written Plea Agreement was presented to the Court, and Jimenez pleaded guilty to the single count of the Indictment. (Doc. 43, ¶ 1) The Court ordered a presentence investigation, and a Presentence Investigation Report was prepared and submitted to the Court. (Doc. 58) Jimenez appeared for sentencing on October 2, 2002. (Doc. 57) The Court made inquiry that Jimenez was satisfied with his counsel, final approval of the Plea Agreement was expressed, and the Court imposed a below-guidelines sentence of 46 months imprisonment, three years supervised release, a $2,500.00 fine, and a $100.00 special assessment. (Doc. 57) Judgment was entered by the Court on October 3, 2002. (Doc. 59) Jimenez did not pursue a direct appeal from the Judgment.

On May 16, 2011, the United States filed a Petition for Remission of Fine. (Doc. 62) The Petition alleged that Jimenez was released from the Bureau of Prisons on May 23, 2005; that the United States Immigration and Customs Enforcement Service had advised that Jimenez was deported on June 15, 2005; and, that there was no reasonable likelihood that further efforts to collect the fine would be productive. (Doc. 62) An Order granting the Petition for Remission of Fine was entered by the Court on May 17, 2011. (Doc. 63)

On March 10, 2016, Jimenez filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"). (Doc. 64) The Motion raises three grounds for relief, all inter-related, which are summarized as follows:

(1) That his plea of guilty was "unlawfully induced without understanding of the nature and the consequences of the plea," in that Lucas did not advise Jimenez that he would be deported at the end of his sentence (Doc. 64, p. 4[1]);

(2) Ineffective assistance of counsel in that Lucas did not advise Jimenez that he would be deported at the end of his sentence (Doc. 64, p. 5); and,

(3) Denial of his right to appeal based upon his counsel's failure to advise him that he would be deported at the end of his sentence (Doc. 64, p. 7).

Regarding timeliness of the Motion, Jimenez alleges that "[t]he one year does not apply due do (sic) that I was violated of my rights." (Doc. 64, p. 12)

As the Motion and the files and records of the case conclusively show that Petitioner is entitled to no relief, the undersigned has not caused notice thereof to be served upon the United States attorney. 28 U.S.C. § 2255(b). The United States, therefore, has not filed a response.

## II.  Discussion

"A prisoner *in custody* under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a) (emphasis

---

[1] Document page number references are made to the Clerk's CM/ECF pagination, not the internal pagination in any particular document.

added). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of the Motion and the files and records of this case conclusively shows that Jimenez is not entitled to relief, and the undersigned recommends the denial and dismissal of his Motion with prejudice.

## A. Timeliness

A one year period of limitation applies to motions under 28 U.S.C. § 2255. This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

The operative date in this case is "the date on which the judgment of conviction becomes final," as Jimenez raises no issue regarding any impediment created by Government action to making his Motion, he asserts no right newly recognized by the Supreme Court made retroactive to cases on collateral review, and he makes no claim based on newly discovered evidence. An un-

appealed criminal judgment becomes final when the time for filing a direct appeal expires. *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n. 2 (8th Cir. 2008). The Judgment in this case was entered on October 3, 2002. Had Jimenez wished to file an appeal, he was required to do so within 10 days. *See* Fed. R. App. P. 4(b)(1)(A)(i)[2]. Jimenez did not file an appeal, and his judgment of conviction thus became final on October 13, 2002. *See Murray v. United States*, 313 Fed. App'x 924 (8th Cir. 2009). From that date, Jimenez had one year, or until October 13, 2003, to timely file his § 2255 habeas petition. Jimenez filed his § 2255 Motion on March 10, 2016, which was 12 years, 4 months, and 26 days after the limitations period expired. Because the Motion has been filed beyond the one year period of limitation, the Court lacks jurisdiction to consider the merits of Jimenez's claims and the Motion should be summarily dismissed.

Timeliness is crucial to the consideration of a motion made under § 2255. *See, e.g., Alsup v. United States*, No. 09-3266-CV-S-RED, 2010 WL 376990, at pp. 2-3, (W.D. Mo. Jan. 26, 2010) (unpublished), in which the Government's motion to dismiss petitioner's § 2255 motion was granted where the motion was filed *one day* out of time. "Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere, statutes of limitation protect important social interests (internal citation omitted), and limitation periods work both ways - you can be sure [petitioner] would not be pooh-poohing the prosecution's tardiness if he had been indicted one day after the statute of limitations expired for his crimes." *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Here, of course, we are not dealing with Jimenez just missing the limitations deadline by one day, but by a period of over 12 years. Consequently, unless either statutory or equitable tolling applies, the Motion was not timely

---

[2] Amended from 10 days to 14 days in 2005.

filed and should be summarily dismissed.

### 1. Statutory Tolling

The one year period within which to file a § 2255 motion may, in an appropriate case, begin on the date on which an impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; from the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, from the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(2-4). The § 2255 Motion filed by Jimenez sets forth nothing in support of any of these grounds to extend the one year limitations period. There is, therefore, no factual basis to find that any of the § 2255(f)(2-4) statutory provisions apply to this case to extend the one year limitations period beyond the date when the judgment of conviction became final. Unless equitable tolling applies, the Motion was not timely filed and should be dismissed.

### 2. Equitable Tolling

The Eighth Circuit has held that the doctrine of equitable tolling is available to a § 2255 movant, but only "under limited conditions, for example, where extraordinary circumstances beyond a prisoner's control prevent the timely filing." *See Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001); *United States v. Martin*, 408 F.3d 1089, 1092 (8th Cir. 2005). The use of equitable procedures should be infrequent, *see Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002), and will not be applied if the habeas movant has not diligently pursued his rights, *see Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007). "Equitable tolling is an exceedingly narrow window of relief." *Maghee v. Ault*,

410 F.3d 473, 476 (8th Cir. 2005).

Jimenez has not alleged that any extenuating circumstances beyond his control prevented a timely filing, nor has he even relied on the doctrine of equitable tolling. He does not claim that some Government action made it impossible or difficult for him to uncover the facts that he now asserts in support of his claims. He does not allege that the Government somehow lulled him into inaction. He does not refer to any extraordinary circumstances, attributable to the Government or to any other external cause, that prevented him, in the exercise of reasonable diligence, from discovering the facts upon which his claims are based soon enough to enable him to bring a timely habeas petition.

In sum, Jimenez fails to allege any extraordinary circumstances beyond his control that prevented him from timely filing his § 2255 Motion. He asserts that the one year limitations period does not apply because his rights have allegedly been violated (Doc. 64, p. 12); but, of course, an alleged violation of one's rights is what forms the basis for any § 2255 motion, and a violation of rights, standing alone, does not extend the limitations period in perpetuity. If it did, the provision for the one year limitations period would be rendered meaningless. Nor has Jimenez shown that he exercised due diligence in the pursuit of his rights. After over 12 years, he now asserts claims that could have, and should have, been raised during the one year limitations period. In doing so, he alleges no new facts that would explain a delay in bringing his claims. He has failed to allege and establish any factual basis whatsoever to fit within the "exceedingly narrow window of relief" that equitable tolling provides, and his § 2255 Motion should be dismissed as untimely.

## B.  Procedural Default

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct.

1584, 1593, 71 L.Ed.2d 816 (1982) (internal citations omitted). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-47, 81 L.Ed.2d 437 (1984). Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*.

In this case, Jimenez did not pursue any relief on direct appeal. As discussed above, Jimenez could have challenged that his guilty plea was knowingly and voluntarily made on appeal. *See DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000). By failing to do so, Jimenez procedurally defaulted the constitutional claims he now raises.

This procedural default may be excused only if Jimenez "can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual

-8-

basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991).

Jimenez makes no such showing here. Jimenez fails to demonstrate how the factual or legal basis for his constitutional claims was not reasonably available to him in time to pursue relief on direct appeal. Jimenez alleges that his counsel "did not once mention that I would be deported at the end of my sentence," and that if he had known of this, "I would have never agreed." (Doc. 64, p. 4) The record shows, however, that at his sentencing hearing the Court specifically advised Jimenez that "it is anticipated that the Defendant will be deported by the Immigration and Naturalization Service following the term of imprisonment." (Court Recording; proceeding on 10/2/02) This admonition is also found in the Judgment entered by the Court on October 3, 2002. (Doc. 59, p. 3) Jimenez was, therefore, clearly informed of his anticipated deportation following service of his sentence in time to pursue relief on direct appeal. He simply failed to do so.

Further, there is no assertion by Jimenez that some interference by government officials, or some external impediment, prevented him from raising his constitutional claims in the trial court or on direct appeal.

Since Jimenez has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982)). Even so, Jimenez has presented absolutely no new, reliable evidence to support his challenge to the voluntary and intelligent nature of his guilty plea. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred

claim." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Jimenez has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to overcome the procedural default of the constitutional claims he now asserts, and his § 2255 Motion should be dismissed.

### C.  Lack of Subject Matter Jurisdiction

The conviction and sentence challenged by Plaintiff was entered on October 3, 2002. (Doc. 59) The Judgment reflects that Jimenez pleaded guilty to Count One of the Indictment, and upon adjudicating Jimenez guilty of the offense of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)(II), Jimenez was sentenced to forty-six (46) months imprisonment, three (3) years supervised release, a fine of $2,500.00, and a $100.00 special assessment. (Doc. 59) The fine was remitted by Order entered on May 17, 2011. (Doc. 63)

Having fully served his sentence of imprisonment, Jimenez was released from the Bureau of Prisons on May 23, 2005. (Doc. 62) His three (3)  years of supervised release then expired on May 23, 2008. Jimenez's sentence under conviction has unconditionally and fully expired. In *Maleng v. Cook*, 490 U.S. 488, 492, 109 S.Ct. 1923, 1926, 104 L.Ed.2d 4537 (1989), the Supreme Court held that once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for purposes of a habeas attack upon it. *See also Bent v. United States*, 340 F.2d 703, 706 (8th Cir. 1965) (sentences which had long since been served were not subject to collateral attack under § 2255 motion to vacate convictions) (internal citations omitted).

Accordingly, since Jimenez has been unconditionally released from custody under the federal sentence which he is now attacking, relief is not available to him under 28 U.S.C. § 2255.

### D.  Coram Nobis Relief Not Warranted

That Jimenez is not entitled to habeas relief under 28 U.S.C. § 2255 does not end the inquiry. While exceptionally rare, one who has fully served a federal sentence may still challenge the legality of trial and conviction in federal court by a proceeding in the nature of *coram nobis*. In *Azzone v. United States*, 341 F.2d 417, 418-419 (8th Cir. 1965) (citing *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed.2d 248 (1954)), the Court noted that, "although the term has been served, the results of the conviction persist[;] [s]ubsequent convictions may carry heavier penalties, civil rights may be affected." The Court noted, however, the important caveat in *Morgan* that, "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice," and that "the writ is designed to correct errors 'of the most fundamental character.'" *Id*. The Court also observed that *coram nobis* may not be used as a substitute for an appeal. *Id*. at 419. There, in that Azzone had been released from custody under the sentence he was attacking and relief was not available to him under 20 U.S.C. § 2255, the Court determined that Azzone's motion was entitled to be treated as an application for a writ of error *coram nobis*. *Id*. In the interest of judicial economy, the undersigned will similarly consider Jimenez's Motion.

In his Motion, Jimenez asserts that his counsel led him to believe that entering into the plea agreement was in his best interest, and that not once did his counsel mention that he would be deported at the end of his sentence. He alleges, "[i]f I would have been made aware of the consequences of this, I would never have agreed." (Doc. 64, p. 4) He claims to have been threatened and shot at  after being sent back to Mexico "because of my testimony on this case," and that "[h]ad I known the deportation would have taken place, I would have asked for a different plea agreement."

-11-

(Doc. 64, p. 4) He also claims that he did not know that he needed to appeal the judgment due to his counsel's failure to advise him of the risk of deportation. (Doc. 64, p. 7)

On March 31, 2010, over seven years after Jimenez's conviction became final, the Supreme Court held in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) that when advising a criminal defendant about the consequences of pleading guilty, "counsel must inform her client whether his plea carries a risk of deportation," and that failure to do so is subject to analysis under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court recognized that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." (*Id*. at 368)

Thereafter, the question arose whether *Padilla* announced a new rule of constitutional law or represented a new application of an old rule. The distinction is critical because old rules apply retroactively on collateral review, while new rules generally do not. *See Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In *Abraham v. United States*, 699 F.3d 1050, 1052 (8th Cir. 2012), the Eighth Circuit recognized that the circuits were split over the issue, and that the United States Supreme Court granted certiorari in *Chaidez v. United States*, 132 S.Ct. 2101, 182 L.Ed.2d 867 (2012) to resolve the split.

The Supreme Court's decision in *Chaidez v. United States*, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013) is dispositive in this case. Chaidez, a Mexican national who had become a lawful permanent resident of the United States, pleaded guilty to two counts of mail fraud, and her conviction became final in 2004. Immigration officials initiated removal proceedings against Chaidez in 2009. In an effort to avoid removal, Chaidez sought to overturn her 2004 conviction by filing a petition for a writ of *coram nobis*. She argued, as does Jimenez, that her former attorney's failure to advise her of the

-12-

immigration consequences of pleading guilty constituted ineffective assistance of counsel under the Sixth Amendment. In analyzing the issue, the Court said, "when we decided *Padilla*, we answered a question about the Sixth Amendment's reach that we had left open, in a way that altered the law of most jurisdictions."  *Id*. at 1110. Prior to *Padilla*, the categorical exclusion of advice about collateral consequences (such as deportation) from the Sixth Amendment's scope was one of "the most widely recognized rules of American law." *Id*. at 1109 (internal citation omitted). "It was *Padilla* that first rejected that categorical approach – and so made the *Strickland* test operative – when a criminal lawyer gives (or fails to give) advice about immigration consequences." *Id*. *Padilla*, the Court held, thus announced a "new rule." *Id*. at 1111.

As *Padilla* announced a new rule or constitutional law, under *Teague* defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding. Jimenez's conviction on October 3, 2002 became final long before *Padilla* announced its new rule. As *Chaidez's* petition for writ of *coram nobis* was denied, so too must Jimenez's.

### E.  No Entitlement to Relief; No Service

Where a motion and the files and records of the case conclusively show that a prisoner is entitled to no relief, notice of the motion and service upon the United States attorney are not required. 28 U.S.C. § 2255(b). Such are the circumstances here.

As discussed above, the undersigned finds the Motion filed by Jimenez is untimely; his claims are procedurally barred; the Court lacks subject matter jurisdiction to grant relief under 28 U.S.C. § 2255 inasmuch as the federal sentence Jimenez is attacking has fully expired; and, his claims, when considered to be in the nature of a petition for a writ of *coram nobis*, are barred by *Chaidez* and *Teague*.

### III.  Conclusion

For the reasons and upon the authorities discussed above, Jimenez's claims are unsupported by the record in this case. I recommend that Jimenez's Motion, filed under 28 U.S.C. § 2255, or alternatively considered to be a Petition for Writ of *Coram Nobis*, be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of March, 2016.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-14-